IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 20, 2002

## STATE OF TENNESSEE v. JAMES F. MASSENGALE

**Appeal from the Criminal Court for Sullivan County
No. S42,441     Phyllis H. Miller, Judge**

---

**No. E2000-00774-CCA-R3-CD**
**October 21, 2002**

---

The defendant, James F. Massengale, who had been charged with eight counts of theft of property valued at greater than $10,000, three counts of theft of property valued at more than $1,000, three counts of attempted theft of property with a value greater than $10,000, and one count of burglary of an automobile, was convicted of five counts of theft over $10,000, one count of attempted theft over $10,000, and one count of burglary of a vehicle. The trial court imposed an effective sentence of eighteen years, with ten years to be served in the Department of Correction and eight years to be served on probation. In this appeal, the defendant asserts that the evidence is insufficient to support the convictions and that the trial court erred by ordering consecutive sentences. The judgments of the trial court are affirmed.

**Tenn. R. App. P. 3; Judgments of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

Richard A. Tate, Blountville, Tennessee, for the appellant, James F. Massengale.

Paul G. Summers, Attorney General & Reporter; Thomas E. Williams, III, Assistant Attorney General; and Barry Staubus and Teresa Murray-Smith, Assistant District Attorneys General, for the appellee, the State of Tennessee.

**OPINION**

On July 6, 1997, a 1997 Chevrolet Blazer belonging to Gary Miller and having a value of approximately $29,000 was stolen from the parking lot of the Concordia Lutheran Church in Kingsport. Some ten days later, a 1995 Chevrolet Blazer owned by Sheila Hughes and having a value of $19,000 was stolen from a parking lot at the Holston Valley Medical Center. The vehicle was recovered in Indianapolis, but had been "stripped." According to Ms. Hughes, there was extensive damage to the driver's side door and the steering column which cost $5,000 to repair.

Approximately two weeks after the Hughes theft, a 1997 Chevrolet Blazer belonging to Amy Russell was taken from a parking lot at the same medical center. The vehicle, which had a value of $25,000, was also recovered in Indianapolis.

On October 29, 1998, a 1994 Dodge truck belonging to Kristen Irvin was stolen from the same medical center parking lot. The vehicle, which had a value of $20,000, was recovered in Indiana with damage to the driver's side door and steering column. On February 5, 1999, Linda Alley's black 1996 Chevrolet Blazer, valued at $25,000, was stolen from a parking lot at the medical center. The vehicle was never recovered.

The records of the Kingsport Inn, located within a mile of the medical center parking lot, indicated that a Jim Massengale had registered as a guest on July 15, 1997, and again on July 27, 1997, each time departing on the following day. No further entry was recorded in this name until February 10, 1999. The address listed on each registration form was 2212 South 18th Street, New Castle, Indiana, the defendant's home address. Records from the Days Inn in Kingsport established that a Dawn Duncan of Indianapolis, Indiana, registered as a guest at that motel on July 4, 1997, and departed two days later. The registration form indicated that two people were staying in the room, which was located directly across from the Concordia Lutheran Church.

When a stolen Dodge truck was found at a trailer park in Greenwood, Indiana, Detective Michael Wright of the Greenwood Police Department conducted an investigation. Upon his arrival, a female, later identified as Becky Beerman, left a trailer and got into the truck. While speaking with Ms. Beerman, officers noticed a second Dodge truck parked across the street in the driveway of a vacant trailer. When officers processed the number on the second truck's license plate, they discovered that the plate was registered to a different vehicle. They then processed the vehicle identification number and discovered that the second truck had been stolen from Kingsport, Tennessee. After discovering that the second truck was stolen, officers requested, and were granted, permission to search Ms. Beerman's residence. As a result of their conversation with Ms. Beerman, the officers determined that their suspect was named "Jimbo."

Ms. Beerman led officers to a room in the trailer where "Jimbo" was staying. Officers found a black bag containing men's clothing and papers bearing the name James Massengale with an address of New Castle, Indiana. They found a laptop computer under the bed that belonged to Kristen Irvin, one of the theft victims. It was later determined that the second Dodge truck was that stolen from Ms. Irvin. Officers found a wallet in an adjacent bathroom. The wallet contained a piece of paper with the name and address of Dawn Duncan, the individual who had been registered as a guest at the Days Inn on the day that a vehicle was stolen from the parking lot of the Concordia Lutheran Church. An Indiana identification card with the defendant's picture and bearing the name Jim Alexander was also found. A birth certificate from the state of New York which also bore the name Jim Alexander was in the bathroom.

Detective James Moffatt of the Kingsport Police Department concluded that each of the auto thefts had occurred within a one-mile radius. Most of the thefts involved Chevrolet Blazers. These

were recovered in the Indianapolis, Indiana, area. During the course of the investigation, officers discovered that the defendant had stayed at either the Kingsport Inn, Westside Inn, or Days Inn on the days of the thefts. Detective Moffatt, along with other members of the Kingsport Police Department, conducted surveillance of the Kingsport Inn on February 10 and 11, 1999. After checking in and spending the night, a male and a female left their motel room at approximately 10:30 a.m. in a red Honda. The female was driving. Police followed the vehicle to Holston Valley Medical Center where the male suspect got out and walked into the parking garage.

Detective Marvin Bell, also of the Kingsport Police Department, maintained visual contact with the male suspect, later identified as the defendant, as he walked to a 1996 GMC Jimmy, which belonged to Tamara Beard. When the defendant entered the driver's side of the Jimmy and leaned over the right side of the steering wheel, Detective Bell and Detective Frank Light approached the vehicle, saw damage to the driver's side door handle, and noticed that the ignition ring had been removed from the steering column. The defendant's brown jacket, a pair of vice grips, and a screwdriver were on the passenger seat. The defendant initially identified himself as James Lee from New Castle, Indiana.

The female driving the red Honda was Charlee Parker, who said she had first met the defendant at a saloon on the night before. She spent the night with the defendant at the Kingsport Inn and on the next morning, the defendant asked her to take him to Holston Valley Medical Center to visit a sick friend. Ms. Parker was stopped by police a short distance from the hospital, but was never charged with any of the thefts.

After being notified by hospital security that her 1996 GMC Jimmy had been burglarized, Tamara Beard inspected her vehicle, which she valued at $18,000, and discovered that the ignition cover was in the passenger seat and "the door handle was busted." She confirmed that the jacket, screwdriver, vice grips, and flashlight found in the vehicle did not belong to her.

Detective Light discovered that a Dawn Duncan from Indianapolis was a guest at the Days Inn when one of the vehicles was taken. Police found sheets of paper with her name and the name "Jimmy" in the room she occupied. After learning that Ms. Duncan had traveled to Norton, Virginia, Detective Light contacted the Norton Police, who provided photographs of Ms. Duncan and her companion, James Massengale. Detective Light then discovered that a James Massengale was registered as a guest at the Kingsport Inn when the 1997 Chevrolet Blazer was stolen from Amy Russell. While interviewing the defendant after his arrest, Detective Light asked the defendant if he knew the whereabouts of the black Blazer belonging to Linda Alley. The defendant responded, "Hypothetically speaking, let's say I know where the black Blazer is in Indiana, I know you'll never find it." The defendant then acknowledged that the Blazer was located "in someone's backyard."

At the conclusion of the state's proof, the trial court entered judgments of acquittal to three counts of theft of property valued at greater than $1,000 in relation to the thefts of vehicles from Marsha Fletcher, Annette Wolfe, and Cherokee Oil Company. The trial court also entered judgments of acquittal on two counts of attempted theft of property with a value of more than $10,000 in

relation to vehicles belonging to Angela Jessee and Elaine Brooks. Finally, the trial court entered a judgment of acquittal on two counts of theft over $10,000 in relation to vehicles stolen from Jennifer Bragg and Permin Shelton.

The jury convicted the defendant of five counts of theft over $10,000 for the Miller, Hughes, Russell, Irvin, and Alley vehicles. The defendant was convicted of one count of burglary of an automobile and one count of attempted theft over $10,000 for entering the Jimmy belonging to Tamara Beard. Lastly, the defendant was found not guilty of theft over $10,000 of a vehicle belonging to David Adams which was taken from the parking lot of the Kingsport Times.

**I**

The defendant first asserts that the evidence is insufficient to support his convictions for theft over $10,000. On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856, 859 (1956). Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992).

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103. Theft of property valued at more than $10,000 but less than $60,000 is a Class C felony. Id. § 39-14-105(4). "Value" is defined as follows:

(i) The fair market value of the property . . . at the time and place of the offense; or
(ii) If the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense.

Tenn. Code Ann. § 39-11-106(35)(A). Owners are competent by fact of ownership to testify to the value of the property stolen. State v. Hamm, 611 S.W.2d 826 (Tenn. 1981); Reaves v. State, 523 S.W.2d 218, 220 (Tenn. Crim. App. 1975).

Where the evidence is entirely circumstantial, the jury must find that the proof is not only consistent with the guilt of the accused but inconsistent with his innocence. There must be an evidentiary basis upon which the jury can exclude every other reasonable theory or hypothesis except

that of guilt. Pruitt v. State, 3 Tenn. Crim. App. 256, 460 S.W.2d 385, 390 (Tenn. Crim. App. 1970). The trial court has the duty to charge the jury on the weight and significance of circumstantial evidence when it is the only basis upon which the state's case rests. Bishop v. State, 199 Tenn. 428, 287 S.W.2d 49, 52 (Tenn. 1956). Like all other fact questions, the determination of whether all reasonable theories or hypotheses are excluded by the evidence is primarily a jury question. State v. Tharpe, 726 S.W.2d 896 (Tenn. 1987); Marable v. State, 203 Tenn. 440, 313 S.W.2d 451, 457 (Tenn. 1958).

The jury is governed by four rules when testing the value of circumstantial evidence: (1) The evidence should be acted upon with caution; (2) all of the essential facts must be consistent with the hypothesis of guilt; (3) the facts must exclude every other reasonable theory except that of guilt; and (4) the facts must establish such a certainty of guilt as to convince beyond a reasonable doubt that the defendant is the perpetrator of the crime. Marable, 313 S.W.2d at 456.

Here, the proof established that vehicles having a value of greater than $10,000 were stolen from Gary Miller, Sheila Hughes, Amy Russell, Kristen Irvin, and Linda Alley. Each of the vehicles was stolen from an area having a one-mile radius and most were taken from the parking lot of the Holston Valley Medical Center. Receipts from local motels established that James Massengale from New Castle, Indiana, was registered as a guest on the days that the thefts occurred. Several of the stolen vehicles were later recovered from the Indianapolis, Indiana, area, only a short distance from the defendant's residence. The Dodge truck belonging to Ms. Irvin was recovered across the street from the residence where the defendant had been staying. In addition, a laptop computer which belonged to Ms. Irvin was found in the bedroom where the defendant had been sleeping. During an interview with police, the defendant indicated that he knew the location of the black Blazer which was taken from Ms. Alley. The evidence of each offense tended to corroborate the others. Under these circumstances, it is our view that the evidence was sufficient to support the defendant's convictions.

## II

As his final issue, the defendant asserts that the trial court erred by ordering consecutive sentencing. The state disagrees. When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597, 600 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel

relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

In calculating the sentence for a Class B, C, D, or E felony conviction, the presumptive sentence is the minimum in the range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c). If there are enhancement but no mitigating factors, the trial court may set the sentence above the minimum, but still within the range. Tenn. Code Ann. § 40-35-210(d). A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence. Tenn. Code Ann. § 40-35-210(e). The sentence must then be reduced within the range by any weight assigned to the mitigating factors present. Id.

The trial court imposed a sentence of eight years on three of the five convictions for theft over $10,000 and the conviction for attempted theft over $10,000. A sentence of ten years was imposed on the remaining two convictions for theft over $10,000 and a sentence of four years was imposed for the conviction for burglary of an automobile. The trial court ordered that the ten-year sentences be served concurrently. The remaining sentences were to be served concurrently with each other and consecutively to the ten-year sentence for an effective sentence of eighteen years. The defendant is to serve the ten-year sentence in the Department of Correction and the eight-year sentence on probation.

The trial court first determined that the defendant qualified as a Range II, multiple offender and then concluded that enhancement factor (1), that the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, was applicable to all of the convictions. See Tenn. Code Ann. § 40-35-114(1). In addition, the trial court applied enhancement factor (13), that the felony was committed while the defendant was on probation, to two of the convictions for theft over $10,000 as well as the convictions for burglary of an automobile and attempted theft. See Tenn. Code Ann. § 40-35-114(13). In mitigation, the trial court found that the defendant's conduct neither caused nor threatened serious bodily injury, see Tenn. Code Ann. § 40-35-113(1), but gave that factor very little weight.

The trial court ordered consecutive sentences on the following grounds:

I find he's a professional criminal who has knowingly devoted his life to criminal acts as a major source of livelihood.
. . .
Number two, he has an extensive record of criminal activity. Now, not if you just look at convictions, but if you look at his statement he does. . . . [H]e's being sentenced for an offense committed while on probation from Sevier County, so I [find] several [factors applicable].

Prior to the enactment of the Criminal Sentencing Reform Act of 1989, the limited classifications for the imposition of consecutive sentences were set out in Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976). In that case, our supreme court ruled that aggravating circumstances must be present before placement in any one of the classifications. Later, in State v. Taylor, 739 S.W.2d 227 (Tenn. 1987), the court established an additional category for those defendants convicted of two or more statutory offenses involving sexual abuse of minors. There were, however, additional words of caution:

> [C]onsecutive sentences should not routinely be imposed . . . and . . . the aggregate maximum of consecutive terms must be reasonably related to the severity of the offenses involved.

Taylor, 739 S.W.2d at 230. The Sentencing Commission Comments adopted the cautionary language. Tenn. Code Ann. § 40-35-115, Sentencing Commission Comments. The 1989 Act is, in essence, the codification of the holdings in Gray and Taylor; consecutive sentences may be imposed in the discretion of the trial court only upon a determination that one or more of the following criteria[1] exist:

> (1) The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;
> (2) The defendant is an offender whose record of criminal activity is extensive;
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;
> (5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;
> (6) The defendant is sentenced for an offense committed while on probation; or
> (7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).

---

[1] The first four criteria are found in Gray. A fifth category in Gray, based on a specific number of prior felony convictions, may enhance the sentence range but is no longer a listed criterion. See Tenn. Code Ann. § 40-35-115, Sentencing Commission Comments.

The length of the sentence, when consecutive in nature, must be "justly deserved in relation to the seriousness of the offense," Tenn. Code Ann. § 40-35-102(1), and "no greater than that deserved" under the circumstances, Tenn. Code Ann. § 40-35-103(2); State v. Lane, 3 S.W.3d 456 (Tenn. 1999).

Here, the defendant was convicted of seven offenses. Proof presented at trial and at the sentencing hearing established that the defendant was part of an automobile theft ring spanning a three-state area. The record indicates that the defendant told an agent of the FBI that he had stolen as many as 150 cars per year and admitted that car theft was his primary source of income. The defendant explained to officers that he would receive between $1200 and $3500 for every car that he stole in Indiana and delivered to Virginia. The defendant testified that he often delivered "packages," which sometimes included stolen cars, to an individual named "Laney" in Norton, Virginia. "Laney," in turn, would drive the defendant to the Kingsport area where he would steal a car to drive back to Indiana. The presentence report indicated that the defendant was last employed in 1992 at a truck repair shop in California. Deena McCullough, a probation officer, testified at the sentencing hearing that the defendant had been placed on probation in Sevier County on October 8, 1998.

In our view, the evidence established that the defendant had an extensive criminal history and also qualified as a professional criminal. See, e.g., State v. Desirey, 909 S.W.2d 20 (Tenn. Crim. App. 1995). That he was on probation when two of the offenses were committed is a further basis for consecutive sentencing. See Tenn. Code Ann. § 40-35-115(b)(6). Thus, the trial court did not abuse its discretion by ordering consecutive terms.

Accordingly, the judgments of the trial court are affirmed.

_____
GARY R. WADE, PRESIDING JUDGE